SEALED BY ORDER OF THE COURT

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>JEFFREY PRICE<br><br>*Defendant(s)* | Case No. **CR 21-70317-MAG** |

FILED
Feb 22 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **September 23, 2020** in the county of **Santa Cruz** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(i) | Possession of a Firearm Silencer Without a Serial Number<br><br>MAXIMUM PENALTIES<br>Imprisonment: 10 years<br>Fine: $10,000<br>Supervised Release: 3 years<br>Special Assessment: $100<br>Potential Immigration Consequences |

This criminal complaint is based on these facts:

See attached affidavit of DEA Special Agent Dan Tush.

☑ Continued on the attached sheet.

Approved as to form /s/ Maria Perez
Assistant U.S. Attorney

/s/ Daniel A. Tush w/permission by VKD
*Complainant's signature*
Dan Tush, DEA Special Agent
*Printed name and title*

Sworn to before me by telephone.

Date: February 22, 2021

/s/ Virginia K. DeMarchi
*Judge's signature*

City and state: San Jose, CA

Hon. Virginia K. DeMarchi
*Printed name and title*

# AFFIDAVIT OF DEA SPECIAL AGENT DANIEL TUSH IN SUPPORT OF THE APPLICATION FOR AN ARREST WARRANT

I, Daniel Tush, a Special Agent of the Drug Enforcement Administration, being duly sworn, hereby declare as follows:

## I.     INTRODUCTION

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.      I make this affidavit in support of a Criminal Complaint charging **Jeffrey PRICE** with one count of Possession of a Firearm Silencer Without a Serial Number, in violation of 26 U.S.C. § 5861(i).

3.      The facts and information contained in this affidavit are based on my training and experience, my personal observations, my participation in the investigation described herein, my conversations with other law enforcement agents and witnesses involved in this investigation, and my review of records and evidence obtained during this investigation.  Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, it does not set forth every fact that I or others have learned during the course of this investigation.

## II.     AGENT BACKGROUND

4.      I am a DEA Special Agent currently assigned to the San Jose Resident Office.  As a Special Agent with the DEA, my investigations focus on large-scale narcotic offenders.  I have been employed by the DEA since September 2017.  I successfully completed an eighteen-week DEA Basic Agent Training Academy at the DEA Academy in Quantico, Virginia.  This training included instruction in the investigation of federal drug and firearms violations.  This training included several hundred hours of comprehensive, formalized instruction in, among other things, basic narcotics investigations, drug identification, detection, interdiction, United States narcotic

laws, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures.

5.      Prior to my employment with DEA, I was employed with the Anne Arundel County Police Department in Maryland for six years.  During that time, I worked as a patrol officer, a field training officer, and a detective in the prevention and detection of crime; apprehension of criminals, gang members or anti-government agents; collected intelligence; conducted surveillance and interrogations of offenders/suspects using appropriate criminal procedures; and conducted extensive investigations of crimes including, but not limited to, theft, burglary, home invasion, sexual assault, and non-lethal serious assaults.  I have been involved in investigations of numerous subjects for crimes involving guns and drugs in the Baltimore, Maryland area, with potential charges including possession of firearms and possession of a controlled substance with intent to distribute.

6.      In addition to a twenty-eight week Recruit Officer Training at the Anne Arundel County Police Academy, I have attended additional trainings to enhance my knowledge of law enforcement, as well as develop additional skills useful in the investigation and apprehension of subjects.  These trainings include the Maryland Police and Corrections Training Commission Basic Investigator School, Brian Harris Interview and Interrogation Course, Confidential Source Training, and Field Training Officer School.

7.      I have spoken to, and worked with, more experienced federal, state, and municipal agents and officers.  During the course of my employment as a Special Agent, I have participated in several investigations of illicit drug trafficking organizations involving the use of confidential informants, electronic and physical surveillance, the analysis of telephone toll records, investigative interviews, and the service of search and arrest warrants.  These investigations include the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, possession of firearms, and conspiracies associated with criminal narcotics offenses.

### III. APPLICABLE STATUTES

8.  Title 26, United States Code, Section 5861(i) makes it unlawful for any person to receive or possess a firearm which is not identified by a serial number as required by this chapter.

### IV. STATEMENT OF PROBABLE CAUSE

9.  On September 22, 2020, members of the Santa Cruz County Sheriff's Office ("SCSO") Special Enforcement Team ("SET") were advised that several subjects on Post Release Community Supervision ("PRCS") were staying at the Chaminade Resort and Spa in Santa Cruz, California, in the Northern District of California.

10. That same day, SCSO SET member Detective Rogelio De La Torre reviewed the probation terms for one of the subjects, Witness 1.[1] Det. De La Torre confirmed that Witness 1 was on active probation (PRCS) status under Santa Cruz County Court docket #18CR07790 with terms to submit himself, his residence, his vehicle, and areas under his dominion and control to search and seizure at any time of day and night with or without a warrant for full search or seizure and to obey all laws.

11. A few days earlier, Det. De La Torre had reviewed the probation terms for another subject, Jeffrey PRICE (hereinafter, "PRICE"). Det. De La Torre knew that PRICE is an active East Side Santa Cruz ("ESSC") gang member who had recently been released from state prison. Det. De La Torre confirmed that PRICE was on active probation (PRCS) status under Santa Cruz County Court dockets #19CR01312 and #19CR03214 with terms to submit himself, his residence, his vehicle, and areas under his dominion and control to search and seizure at any time of day and night with or without a warrant for full search or seizure and to obey all laws.

12. On September 23, 2020, SCSO SET Sergeant Nick Baldrige, Det. De La Torre, Det. Hugo Moreno, Det. Nick Solano, Det. Ryan Fulton, and Det. Chris Jones began proactive

---

[1] Witness 1 was not offered and did not receive benefits in exchange for the information provided herein. Witness 1's statements are not offered for probable cause, merely to explain law enforcement action and your affiant has not reviewed Witness 1's criminal history.

3

patrol in the area of the Chaminade Resort & Spa, located at 1 Chaminade Lane in Santa Cruz, California. The SET members, who were all wearing vests that read "Sheriff," were in unmarked vehicles.

13. While patrolling, Det. De La Torre recognized Witness 1 operating an older model cargo van. Det. Jones, Det. Solano, and Det. Moreno conducted a traffic stop and detained Witness 1 to complete a compliance check per his probation terms. During the vehicle search, Det. Solano located suspected methamphetamine, a digital scale, and paraphernalia relating to methamphetamine use and trafficking in the vehicle. Witness 1 was holding a room key card and stated that he was staying in room 601 at the Chaminade. Witness 1 told Det. Fulton that Jeffrey PRICE was staying with him in the room and that PRICE was there when Witness 1 had left, which was just before Witness 1's encounter with police.

14. Det. Fulton and Det. De La Torre responded to room 601 and knocked on the room door but did not receive a response. The detectives utilized Witness 1's room key to enter the room and announced "Sheriff's Office probation search." Upon entering, they immediately noticed the rear sliding glass door was partially open. The rear door led to an open, unfenced area. It appeared to the detectives that a subject had quickly exited the room as law enforcement had been knocking.

15. Det. De La Torre began a search of the room while Det. Fulton monitored the perimeter of the room to ensure scene security. There were several used syringes on top of the beds and a used glass pipe with burned methamphetamine on the floor next to several gym bags. While Det. De La Torre was searching the room, a male whom Det. Fulton immediately recognized as Witness 2[2] walked past the rear sliding door on the concrete patio belonging to room 601. Witness 2 had a cell phone to his ear. Det. Fulton knew through previous interactions that Witness 2 was on active probation (PRCS) and detained Witness 2 without incident. The

---

[2] Witness 2 was not offered and did not receive benefits in exchange for the information provided herein. Witness 2's statements are not offered for probable cause, merely to explain law enforcement action and your affiant has not reviewed Witness 2's criminal history.

4

screen of Witness 2's cell phone showed that he was on an active call with a subject named "Price."

16. As Det. Fulton detained Witness 2, he observed a black laptop bag leaning against the exterior wall of room 601 next to the open slider. When Witness 2 was detained by Det. Fulton, Witness 2 had been walking in the direction of the bag but had not yet reached the bag's location, so that Det. Fulton determined Witness 2 had not made contact with the bag. Witness 2 admitted to Det. Fulton that PRICE called him and requested that Witness 2 go "check on the room." Witness 2 denied that he was attempting to retrieve the black laptop bag for PRICE. Det. Fulton conducted a probation compliance search of Witness 2 and his vehicle. Det. Fulton released Witness 2 without further evidence.

17. Detectives searched the laptop bag and discovered a complete upper receiver and complete lower receiver with trigger and collapsible butt stock for an AR-15 style assault rifle. The lower of the rifle was milled, and therefore did not have a stamped serial number. Three 30-round magazines were also located in the bag: one was full of .300 round blackout ammunition, the second contained .223 ammunition, and the third was empty. Through my conversations with other agents, I have learned that .300 blackout round ammunition is commonly used for suppressed weapons.

18. Inside of the room under the television, Det. De La Torre located a large blue and black duffle bag with male clothing. In a small pocket on the side of the bag, Det. De La Torre located prison inmate mail addressed to "Jeff PRICE" as well as several photographs of PRICE and other documented ESSC gang members. Inside the duffle bag under the clothing, Det. De La Torre located what he believed to be a black rifle suppressor (commonly referred to as a "silencer"), and a black rifle bipod. The suppressor and bipod fit together with the rifle upper and lower receivers found in the laptop bag.

19. Next to the duffle bag, Det. De La Torre located a thin black fabric bag. Concealed inside were two large burrito sized clear plastic bags that contained a white crystalline substance that Det. De La Torre immediately recognized as crystal methamphetamine,

three smaller bags that contained a brown substance that Det. De La Torre immediately recognized as black tar heroin, and a digital scale with black tar residue on it. Presumptive tests were conducted on one of the suspected methamphetamine packages and one of the suspected heroin packages; both returned positive results for methamphetamine and opiates, respectively. The total gross weight of the two crystalline substance packages was approximately 915 grams, and the total gross weight of the baggies containing the brown substance was approximately 34 grams.

20. Also on the floor near the other bags was a black and blue duffle bag that contained a composition book with "Jeff" written on the cover, photos of Price's family, and a small container labeled "gun oil."

21. Det. De La Torre searched the area by the entrance of the room. Det. De La Torre noticed that the clothing in this area of the room appeared to be larger and of a different style. Det. De La Torre accessed a safe in this area of the room. Inside the safe, Det. De La Torre located approximately two grams of a white crystalline substance, a baggie with approximately eight grams of dried mushrooms, and a pill bottle with medication prescribed to "Witness 1."

22. Detectives placed Witness 1 into a patrol vehicle for transport. While in the patrol vehicle, Witness 1 spontaneously stated that the property in the entry way "hanging and in the drawers" belonged to Witness 1, and all of the bags and property on the floor in the rear of the room belonged to PRICE.

23. A short while later, the detectives located PRICE in room 306 of the hotel. Room 306 was registered to PRICE but PRICE was scheduled to move out of the room that day. The detectives searched room 306 and did not find any contraband. They also observed that PRICE did not have any clothing or personal items in the room, aside from a few small items, and that the beds were made as though the room had not been stayed in.

24. PRICE's PRCS conditions authorize the search of PRICE's electronic devices, and PRICE verbally consented to a search of his cellular phone. Det. Fulton located three

6

photographs on the phone that showed an assault rifle identical to the one located during the search of room 601, both with and without a suppressor identical to the one found in the bag with PRICE's mail and photos. While PRICE was detained, his phone received the following text message from "Dicky," whose name Det. Fulton recognized. The message read: "Danny flaked now I'm riding round with this thing with no bullets.lol. U know someone else who wants it."

25. PRICE was arrested and placed in the same patrol vehicle with Witness 1. During their conversation, which was recorded, both denied knowledge of the narcotics and firearm found in and around room 601.

26. The above-described silencer was examined and test-fired by an ATF Firearms Enforcement Officer and determined to be an operative silencer. The examining officer determined that there was no serial number or manufacturer's markings on the silencer. During the examination, the ATF photographed the silencer; a photo is below.



## V.   CONCLUSION

27. Based on the foregoing, there is probable cause to believe that on or about September 23, 2020, PRICE possessed an unserialized firearm silencer, in violation of 26 U.S.C. §§ 5861(i).

28. I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

        /s/ Daniel A. Tush w/permission by VKD
DANIEL A. TUSH
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me over the telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d) and signed by me on this __22__ day of February 2021.

_____
HON. VIRGINIA K. DEMARCHI
UNITED STATES MAGISTRATE JUDGE

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

## OFFENSE CHARGED

26 U.S.C. § 5861(i) - Possession of a Firearm Silencer Without a Serial Number

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

**PENALTY:**
Imprisonment: 10 years
Fine: $10,000
Supervised Release: 3 years
Special Assessment: $100
Potential Immigration Consequences

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

### DEFENDANT - U.S
JEFFREY PRICE

**DISTRICT COURT NUMBER**
CR 21-70317-MAG

**FILED**
Feb 22 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
DEA S/A Dan Tush

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
[ ] U.S. ATTORNEY  [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form: David L. Anderson
[X] U.S. Attorney  [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): AUSA Maia Perez

## DEFENDANT

**IS NOT IN CUSTODY**
1) [ ] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) [ ] Is a Fugitive
3) [X] Is on Bail or Release from (show District)
Santa Cruz County

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction  [ ] Federal  [ ] State
6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  [ ] Yes  [ ] No
If "Yes" give date filed

**DATE OF ARREST** ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
[ ] SUMMONS  [ ] NO PROCESS*  [X] WARRANT    Bail Amount: None

If Summons, complete following:
[ ] Arraignment  [ ] Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time:    Before Judge:

Comments: